LAUSCHER *v.* MONTGOMERY WARD & COMPANY, INC.

1. MASTER AND SERVANT—SCOPE OF EMPLOYMENT.
   It is the obligation of an employee to perform his duties within the scope of his employment.

2. WORKMEN'S COMPENSATION—PROXIMATE CAUSE—EXPLOSIVES—STOCKROOM ASSISTANT—ARISING OUT OF EMPLOYMENT.
   Personal injuries resulting fatally to plaintiff's decedent did not arise out of or in the course of his employment, where it appears that in his work as stockroom assistant he had been directed not to light fires and on the occasion involved had been ordered to take a drum formerly containing highly inflammable anti-freeze to warehouse, that some remaining contents were spilled in the alley, decedent ignited the spilled fluid and then sought to pour remainder of contents into flame when drum exploded causing burns from which he died two days later.

Appeal from Workmen's Compensation Commission. Submitted January 3, 1950. (Docket No. 5, Calendar No. 44,419.) Decided April 3, 1950.

Jean Lauscher, widow, and Dolores Jean Lauscher, minor child of Norman F. Lauscher, deceased, presented their claim against Montgomery Ward & Company, Inc., employer, for compensation for death of decedent. Award to plaintiffs. Defendant appeals. Reversed and remanded for award denying claim.

REFERENCES FOR POINTS IN HEADNOTES
[1] 35 Am Jur, Master and Servant, § 82 *et seq.*
[2] 58 Am Jur, Workmen's Compensation, § 201 *et seq.*
[2] Workmen's compensation: Injury received while doing prohibited act. 23 ALR 1161; 26 ALR 166; 58 ALR 197; 83 ALR 1211; 119 ALR 1409.

*Robert E. LeMire* (*Ray Derham,* of counsel), for plaintiffs.

*McGinn & Fitzharris* (*Ballard, Jennings, Bishop & Ellsworth, David L. Dickson* and *Francis D. Roth,* of counsel), for defendant.

REID, J.   Defendant appeals from an award by the compensation commission of the department of labor and industry.

Plaintiff Jean Lauscher is the widow of Norman F. Lauscher, who was employed at defendant company's retail store as a stockroom assistant.   At the time of his injury on April 6, 1948, decedent's work consisted of bringing freight from trucks up into the storeroom and from the storeroom down into the various departments in the store.   He worked under the immediate supervision of Fred Krause, who was in charge of shipping and receiving in the store. About 5:25 p.m. on April 6, 1948, Krause directed decedent to take a supposedly empty steel drum of 50-gallon capacity, which had contained anti-freeze, from the basement storeroom and place it in an old wooden building used as a warehouse across the alley from the store.   The drum or barrel had previously been on the main floor of the store and contained type "N" anti-freeze, a highly inflammable liquid.   The drum was marked "inflammable."   The contents of the drum had been withdrawn by means of a pump.   It was empty as far as the pump could operate and there was possibly 1 or 2 pints of liquid left in the drum which the pump could not reach. Decedent Lauscher brought the empty drum on the elevator to the level of the shipping platform in the alley.   He pushed the drum off the platform, letting it fall some 4 feet to the surface of the alley.   The alley was paved with cinders and gravel.   The fall of the drum either caused the cap to come off or that

the drum should leak in some other way. A small quantity of the anti-freeze spilled onto the alley surface and began rapidly to seep into the ground.

Decedent Lauscher attempted to light, with his cigarette lighter, the liquid thus spilled onto the surface of the alley, but he could not so cause the liquid to ignite. Decedent asked a fellow employee for a match but he had none. Decedent then crumpled a piece of paper and lighted it and by that means, set fire to the small pool of anti-freeze on the ground of the alley. He then picked up the barrel and began to pour the still remaining contents on the small fire which he had just lighted. The drum exploded, blowing out the bottom, and threw a fiery mass onto decedent Lauscher, who ran to a point about 50 feet from the place where the explosion occurred and was found lying there a few seconds later by the witness McRae. McRae testified he asked decedent what happened and decedent said, "I don't know; I was fooling around and wasn't thinking."

Decedent Lauscher was removed to the hospital where he died 2 days later because of his burns. He left surviving as his dependents, the plaintiff Jean Lauscher and an infant daughter, Dolores Jean Lauscher, who is treated by the compensation commission in the making of the award as though a co-plaintiff, although the petition was signed by the widow only.

The deputy commissioner made an award favorable to plaintiffs. On appeal by defendant, the commission affirmed the award of the deputy commissioner and in so doing, among other things found:

"The deceased lighted the liquid which had spilled on the ground. We do not believe he did this in a spirit of playfulness. Of course we do not know what he had in mind when he lighted this fluid but it would seem to us that rather than leave this dangerous liquid on the ground in a public alley unprotect-

ed at closing time, he probably intended to burn it off and do away with this fire hazard to protect the employer's property.  After lighting the fluid he then picked up the drum, and in so doing, some more of the liquid spilled on the fire, causing the drum to explode, burning the deceased severely and causing his death a short time later.  The record does not show that the deceased was ever instructed as to the danger of this particular anti-freeze, and we do not believe the deceased could have foreseen, or expected, the result which caused his death.  Furthermore, there is no evidence that the deceased was given any instructions on the care to exercise in the handling of this type of drum and therefore we cannot find that the deceased violated any specific instructions."

The controlling question involved in this case is, was decedent acting in the course or scope of his employment when he was injured?

Decedent was not expressly instructed to light the fire, but on the contrary had been instructed not to light fires.

Decedent was not told to empty the barrel and not instructed to do anything with the drum excepting to remove it to the warehouse.  It was not his duty to empty the drum nor to light its contents.

There was testimony in this case that it is a matter of common knowledge that most anti-freeze mixtures are inflammable.

It is very apparent that decedent Lauscher knew the anti-freeze to be inflammable because of his efforts to set fire to it, and by his final success in setting fire to it.  He saw that it actually was inflammable, and all of this before he finally took the barrel and held it over the open flame.  He must be considered to have anticipated that there remained some unemptied contents still in the drum.  All of his acts concerning setting fire to this inflammable fluid were things that he had not been directed to do

and were all outside of the line of duty which had been marked out for him by the command of his superior Krause. It was the obligation of decedent to perform his duties within the scope of his employment as directed by his employer.

The facts as found by the commission do not justify the conclusion reached by the commission that the personal injuries received by the plaintiff's decedent arose out of and in the course of his employment. The award by the commission is reversed and the matter is remanded to the commission for the entry of an award denying plaintiffs' claim.

Boyles, C. J., and North, Dethmers, Carr, Bushnell, and Sharpe, JJ., concurred.

Butzel, J., did not sit.